IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Esther James                          :
                                      :
         v.                           :    No. 46 C.D. 2018
                                      :    ARGUED:  November 15, 2018
County of Bucks,                      :
                   Appellant          :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED:  December 21, 2018

Appellant, County of Bucks (the County), appeals an Order of the Court of Common Pleas of Bucks County (Trial Court) entering judgment on a jury verdict in favor of Esther James (Appellee) and against the County for personal injuries Appellee sustained when she fell off her bicycle in a park owned by the County. The issue before this Court is whether the Trial Court erred in not granting the County immunity pursuant to the Recreational Use of Land and Water Act (RULWA).[1] After careful review, we affirm the Trial Court.

## I.  Background

Peace Valley Park (the Park) is a 1,500-acre county public park located in New Britain Township, Bucks County.  Tr. Ct. Op., 7/12/17, at 2; Reproduced Record (R.R.) at 749a.  The Park is situated within a largely agricultural and rural area of the County.  County Memorandum of Law in Support of Motion for Judgment Notwithstanding the Verdict (JNOV), 5/31/17, at 13; R.R. at 713a.  The

_____

[1] Act of February 2, 1966, P.L. (1965) 1860, *as amended,* 68 P.S. §§ 477–1 to 477–8.

Park land is owned by the County and is open for free to the public for recreational activities including biking, fishing, boating and walking. County's Motion for Summary Judgment ¶2; R.R. at 16a; County's Memorandum of Law in Support of Motion for Summary Judgment at 3; R.R. at 69a. One of the features in the Park is a paved trail that is regularly used by hikers and cyclists. Part of that paved trail is Chapman Road. Chapman Road was formerly utilized as a public road open for vehicle traffic, but eventually became dedicated for recreational purposes only. Tr. Ct., 3/27/17, Notes of Testimony (N.T.) at 74; R.R. at 277a. Right before a bridge on Chapman Road was a gate made of a thin wire cable that stretched across the road and connected at each end to a bollard.[2] The cable was installed in the 1980s to prevent motorized vehicles from using the street and was partially covered in white plastic. Tr. Ct., 3/27/17, N.T. at 76; R.R. at 279a. Tr. Ct., 3/28/17, N.T. at 20, 32-33; R.R. at 367a, 379a-80a.

On May 28, 2006, Appellee was riding her bicycle on the Chapman Road portion of the trail. As she approached the bridge, she did not see the cable gate and struck it with her bicycle and fell to the ground. Appellee suffered serious injuries to her right knee that ultimately required reconstructive surgery. Tr. Ct., 3/27/17, N.T. at 16-17; R.R. at 118a-19a, 606a. Appellee filed a civil action against the County alleging that the County had negligently maintained the gate and seeking damages for her injuries. Trial Court, Office of Court Administration, Civil Action Case No. 0804948-25-2 at 1; R.R. at 1a-7a.

Prior to trial, the County filed a summary judgment motion arguing that the County was entitled to immunity under the RULWA. Another Trial Court judge was responsible for ruling on the summary judgment motion. The motions judge

---

[2] A bollard is a sturdy, short, vertical post.

2

determined that immunity did not apply and the motion was denied. The Trial Judge accepted that determination as the law of the case and the case proceeded to a jury trial.

At the trial, William Mitchell, executive director of the Bucks County Department of Parks and Recreation, testified for Appellee to the following:

- Between 200,000 to 250,000 people use the Park every year. Tr. Ct., 3/28/17, N.T. at 38; R.R. at 385a.

- There is a cable gate before the bridge on the Chapman Road part of the paved trail. Tr. Ct., 3/28/17, N.T. at 8; R.R. at 355a.

- The cable gate has been in the Park since the 1980s. Tr. Ct., 3/28/17, N.T. at 32-33; R.R. at 379a-380a.

- Individuals visiting the Park would sometimes sit on the cable causing the cable to stretch and sag to the ground and the bollards to move.

- The Park employed five full-time maintenance workers. R.R. at 38a, Dep. of William Mitchell, 3/17/10, at 8. The maintenance workers would tighten the cable when it became loose and sagged, and would tie orange or white polyurethane tape on the cable "to let people know there was a [c]able there." Tr. Ct., 3/28/17, N.T. at 36-37; R.R. at 383a-84a. Tr. Ct., 3/28/17, N.T. at 25; R.R. at 372a.

- At the time of Appellee's injury the cable had "some pieces of PVC pipe attached to it." Tr. Ct., 3/28/17, N.T. at 26; R.R. at 373a.

Marianne Dubresson, also an employee of the Bucks County Department of Parks and Recreation, testified with regard to the temporary removal of the cable as follows:[3]

---

[3] Ms. Dubresson testified via deposition on October 14, 2010. Her deposition is not part of the record. Her testimony was read at trial by Appellee's attorney.

3

Q: To your knowledge, is [the cable] ever removed for any purpose? Are there situations where either [the County's] vehicles or any other public vehicles are permitted to use that roadway?

A: They have a couple of running events in September, and I think there is another one where they actually remove the cable so all the runners can run through, and then they put [the cable] back as soon as it is finished.

Tr. Ct., 3/28/17, N.T. at 49; R.R. at 396a.

At the completion of the trial, the jury found the County 51% contributorily negligent and Appellee 49% contributorily negligent.[4] The County filed post-trial motions which were denied. Thereafter, the Trial Court entered judgment on the jury's verdict. The County now appeals.

## II. Issue

On appeal,[5] the County essentially argues that the Trial Court erred in holding that the County was not entitled to immunity under the RULWA.[6]

---

[4] The jury awarded a total damages award of $50,000. Tr. Ct., 3/29/17, N.T. at 124; R.R. at 592a. Thereafter, Appellee filed a petition for delay damages. Appellee's Petition for Delay Damages Pursuant to Pa. R.C.P. No. 238, 4/7/17, 1-3; R.R. at 691a-93a. The Trial Court issued an order awarding $7,500 in delay damages. Tr. Ct. Order, 10/30/17, at 1-2; R.R. at 775a-76a. Judgment was entered by the Trial Court to include delay damages for a total judgment of $33,000 after the award was molded to reflect Appellee's apportionment of contributory negligence. Tr. Ct. Order, 3/9/18 at 1; R.R. at 796a.

[5] This Court's scope of review as to whether a particular immunity applies is plenary. *Feldman v. Hoffman*, 107 A.3d 821 (Pa. Cmwlth. 2014).

[6] The County raises several issues on appeal including whether:

The Trial Court Erred in Utilizing an Overly Technical Application in Denying Immunity to the County;

The Trial Court Erred in Disregarding the Need for Immunity Arising from the Impracticality of Keeping Large Tracts of Mostly Undeveloped Land Safe for Public Use; [and]

## III. Discussion

The RULWA was enacted in 1966 "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability." Section 1 of the RULWA, 68 P.S. § 477-1. "Recreational purpose" is defined in Section 2 of the RULWA to include "but is not limited to … hunting, fishing, swimming, boating, recreational noncommercial aircraft operations or recreational noncommercial ultralight operations on private airstrips, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports, cave exploration and viewing or enjoying historical, archaeological, scenic, or scientific sites." 68 P.S. § 477-2(3).

In furtherance of that purpose, the RULWA provides that, subject to certain exceptions, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." Section 3 of the RULWA, 68 P.S. § 477-3. An owner who "directly or indirectly invites or permits without charge any person to use such property for recreational purposes"[7] does not incur liability for injury to such persons, except "[f]or willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." Section 6 of the RULWA, 68 P.S. § 477-6.

---

The Trial Court Erred in Failing to Apply the Immunity Provided to Landowners to the County Where [Appellee] Failed to Plead or Show Willful or Malicious Conduct.

Appellant's Br. at i. These issues all fall under the analysis of whether the County was entitled to immunity.

[7] Section 4 of the RULWA, 68 P.S. § 477-4.

5

However, immunity under the RULWA is not absolute. In *Walsh v. City of Philadelphia*, 585 A.2d 445, 450 (Pa. 1991), the Pennsylvania Supreme Court held that:

> When a recreational facility has been designed with improvements that require regular maintenance to be safely used and enjoyed, the owner of the facility has a duty to maintain the improvements. When such an improved facility is allowed to deteriorate and that deterioration causes a foreseeable injury to persons for whose use the facility was designed, the owner of the facility is subject to liability. We do not believe that the [RULWA] was intended by the legislature to circumvent this basic principle of tort law.

In *Mills v. Commonwealth of Pennsylvania,* 633 A.2d at 1118-1119 (Pa. 1993), our Supreme Court again reiterated the principles established in *Walsh* when it addressed a claim of immunity by the City of Philadelphia, the Philadelphia Redevelopment Authority and Penn's Landing Corporation under the RULWA. This case involved a plaintiff who was injured when she stepped into a hole on a grassy slope located on a 37-acre tract of land owned by Penn's Landing. This area led to a museum ship docked at Penn's Landing. The Supreme Court found that immunity under the RULWA did not apply in these circumstances and that:

> landowners of large unimproved tracts of land, **without alteration**, is amenable to the enumerated recreational purposes within [RULWA]….[It] was not intended to insulate owners of fully developed recreational facilities from the normal duty of maintaining their property in a manner consistent with the property's designated and intended use by the public.

*Mills*, 633 A.2d at 1118-1119 (emphasis added).

In reaching this conclusion, the Supreme Court stated:

> it becomes clear that the area in question has been vastly altered from the natural state in which William Penn discovered it several hundred years ago…a landowner must bear the responsibility of maintaining **improvements** placed upon the land to which the general public is

permitted access. Ordinary users…may reasonably expect the area to be maintained in a manner safe for their normal recreational pursuits.

*Mills*, 633 A.2d at 1118-19 (emphasis added). The Supreme Court also recognized that, "[a]lthough, it could be reasonably argued that the unimproved grassy and wooded areas within Penn's Landing do fall within the ambit of [RULWA], such an overly technical application of [RULWA] would certainly lead to inconsistent results and thwart the intended purpose of the act." *Id.*

When deciding whether an area is "improved" for purposes of the RULWA, "this Court's focus must be on the specific land where the injury occurred, rather than on the property as a whole." *Ruspi v. Glatz*, 69 A.3d 680, 688 (Pa. Super. 2013). "[O]ur courts have denied RULWA immunity … where injury occurred on the *developed* portion of a largely unimproved recreational area." *Murtha v. Joyce*, 875 A.2d 1154, 1159 (Pa. Super. 2005) (emphasis in original).

In *Pagnotti v. Lancaster Township*, 751 A.2d 1226 (Pa. Cmwlth. 2000), this Court enumerated the following factors that need to be considered in determining whether the RULWA should insulate a landowner from tort liability:

> (1) the nature of the area in question, that is, whether it is urban or rural, indoor or outdoor, large or small;
> (2) the type of recreation offered in the area, that is, whether persons enter to participate in one of the recreational purposes listed in section 2(3) of the [RULWA];
> (3) the extent of the area's development, that is, whether the site is completely developed and/or significantly altered from its natural state; and
> (4) the character of the area's development, that is, whether the area has been adapted for a new recreational purpose or, instead, would be amenable to the enumerated recreational purposes of the [RULWA] even without alteration.

7

*Pagnotti*, 751 A.2d at 1233-34. The Court in *Pagnotti* also deemed it appropriate to consider any unique facts as additional factors when doing so would advance the purpose of the RULWA. *Pagnotti*, 751 A.2d at 1233-34.

*Pagnotti* involved a decedent who drowned when he slipped from, or swam, over a low head dam on a creek in a park. *Pagnotti*, 751 A.2d at 1227. In determining whether immunity under the RULWA applied, this Court considered not only the unimproved nature of the park as a whole, but also examined the precise location of where the injury occurred. This Court noted that the owner of the land could not have foreseen an injury resulting from the low head dam's disrepair because it did not construct it or even know of its existence until the decedent's accident. For these reasons we determined that immunity did attach.

Thus, as common law has evolved on the issue of whether immunity attaches under the RULWA, it is clear that the analysis is a highly fact-specific determination which must be undertaken on a case by case basis. *Yanno v. Consolidated Rail Corp.*, 744 A.2d 279, 283 (Pa. Super. 1999).

In the case before us, the County argues that the Trial Court disregarded the undeveloped nature of the Park as a whole and applied an overly-technical application of the RULWA in its analysis of the cable gate. The County asserts that the cable gate was not to be enjoyed or used in-and-of itself, but rather was in place to permit visitors to enjoy the Park more safely without vehicular traffic. Appellant's Br. at 16; *see also* Tr. Ct., 3/28/17, N.T. at 33; R.R. at 380a.

Here, it is undisputed that the 1,500-acre Park consisted mostly of unimproved land dedicated to the public for recreational uses, however, the analysis does not end there. We must also analyze the *specific* location where the injury occurred.

8

In the instant matter, the injury did not occur on undeveloped land, but rather on an improved and paved road within the Park. The cable gate, which had been in the Park since the 1980s, was a functioning gate used for crowd control and emergency vehicle access. The gate was situated in an area of the Park that was utilized by emergency vehicles and the public for a variety of recreational uses, including cycling, hiking, and organized marathons. The gate was removed and replaced depending on public activities occurring on the trail. Furthermore, the Park's maintenance crew was aware that individuals visiting the Park sat on the cable causing it to stretch and sag to the ground. As a result, the Park's maintenance crew would conduct periodic maintenance on the gate which involved tightening the cable and tying orange or white polyurethane tape on the cable to alert the public to the presence of the cable.

These facts establish that the cable gate was an improvement requiring maintenance that the public had a reasonable expectation would be maintained. Tr. Ct. Op., 2/12/18 at 13. Tr. Ct., 3/28/17, N.T. at 32-33; R.R. at 379a-380a.[8] For these reasons, the Trial Court did not err in holding that the County was not entitled to

---

[8] The County cites *Stanton v. Lackawanna Energy, Ltd.*, 951 A.2d 1181 (Pa. Super. 2008), to support its argument that the area where the gate was located was undeveloped. However, we do not find this case persuasive. *Stanton* involved a gate that guarded an access road. The Superior Court found that this gate was on land that was not vastly altered from its original state, was in place to prevent dumpers and vandals, and was not subject to ongoing maintenance. For these reasons the Superior Court held that these facts did not constitute a sufficient improvement to remove the land from the protection of the RULWA. *Stanton*, 951 A.2d at 1187.

Again, in the instant case, the gate was located in an area utilized by thousands of people, on a paved road and was subject to periodic maintenance.

immunity under the RULWA. The Trial Court's Order entering judgment in favor of Appellee and against the County is affirmed.[9]

_____

ELLEN CEISLER, Judge

---

[9] Because we hold that immunity does not attach under the RULWA based on the specific facts of this case, we need not address the County's argument that the Trial Court erred in failing to find immunity where Appellee failed to plead or show willful or malicious misconduct on the part of County.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Esther James                   :
                                        :
         v.                   :  No. 46 C.D. 2018
                                          :
County of Bucks,            :
                  Appellant    :

## O R D E R

AND NOW, this 21st day of December, 2018, the Order of the Court of Common Pleas of Bucks County, dated March 9, 2018, is hereby AFFIRMED.

 

                                       _____
                                        ELLEN CEISLER, Judge